[No. 4,093.]

## THE ROMAN CATHOLIC ORPHAN ASYLUM v. SAMUEL ABRAMS.

CERTIFICATE OF INCORPORATION FOR MORAL PURPOSES.—When nine persons sign a certificate to become an incorporated "company or society," for a moral or beneficial purpose, under the statutes of 1850, it is not necessary that the certificate should show that such persons constituted an existing society with rules and regulations, or that the trustees named in the certificate had been chosen in accordance with such rules and regulations.

IDEM.—If such certificate names all the persons who sign it as trustees to manage its affairs for one year, it will be assumed that there were no rules and regulations in conflict with the method adopted in appointing the trustees.

IDEM.—The Court intimates that in such case, a person other than a member, cannot object that the rules and regulations were not complied with.

IDEM.—If such certificate states that the corporate name of the society is "The Roman Catholic Orphan Asylum," it is a sufficient designation of the name by which the corporation shall be known and may acquire and dispose of property.

IDEM.—Such certificate need not contain a statement of the county in which the society is situated.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 12th day of August, 1858, at the City and County of San Francisco, Frances A. McEnnis, Mary F. Buckley, Sebastian Doyle, Mary F. Brown, Frederica McGrath, Mary Bernice Williams, Ella Rose Dougherty, Mary P. O'Driscoll, and Mary P. McCarthy, desiring to act in concert for the objects and purposes specified in the certificate hereinafter mentioned, but principally for the care, relief and protection of orphans, and desiring to form an incorporated company for the promotion of said objects, signed the following certificate:

"To all to whom these presents shall come, greeting:

"This is to certify that we, the undersigned, Frances A. McEnnis, Mary F. Buckley, Sebastian Doyle, Mary B. Brown, Frederica McGrath, Bernice Williams, Ella Rose Dougherty, Mary P. O'Driscoll and Mary P. McCarthy, being desirous to act in concert, and to become and form an incorporated company or society, pursuant and according to the laws of the State of California concerning corporations, have this day associated as such corporation for the purposes hereinafter set forth.

"The objects and purposes for which our corporation or society is formed are as follows:

"First.   For the care, relief and protection of orphans.

"Second.   For the protection, care and relief of sick, disabled and indigent persons.

"Third.   For literary and educational purposes, and establishing, maintaining and conducting one or more schools to accomplish this object.

"That the corporate name of our society is "The Roman Catholic Orphan Asylum," and its purposes and objects only those before stated.

"That the time of our existence as such society is only fifty years.

"That the capital stock of the association is only one thousand dollars.

"That the stock is not divided into any distributive number of shares, but is owned and held by all in common.

"That Frances A. McEnnis, Mary F. Buckley, Sebastian Doyle, Mary B. Brown, Frederica McGrath, Bernice Williams, Ella Rose Dougherty, Mary P. O'Driscoll and Mary P. McCarthy, trustees, are appointed to manage the concerns of said society for the period of one year.

"And that the City of San Francisco, in the State of California, is where the principal place of business of the company or society is to be located."

The certificate was acknowledged before a Notary Public who duly certified to the same, and was, on the 23th of August, 1858, recorded by the Clerk of said city and county. From that time forward the said persons acted as a corporation under the name of "The Roman Catholic Orphan Asylum," and, on the 28th day of May, 1862, one Beideman executed and delivered to the said "Roman Catholic Orphan Asylum," a deed for fifty vara lot three (3), in block eighty-four of the western addition, at the north-east corner of Post and Franklin streets.

On the 9th day of April, 1873, the plaintiff petitioned said Court for leave to sell said lot, and such proceedings were had that, on the 25th of April, 1873, leave was granted. Afterwards the plaintiff and defendant entered into a contract in writing, by which the plaintiff agreed to sell the defendant the lot for $12,000, and the defendant agreed to pay the sum, and paid down $500, as a part of the price. The plaintiff, at the proper time, tendered a deed and demanded payment, but the defendant refused to pay the money or receive the deed on the ground that the plaintiff was not duly incorporated, and was incapable of acquiring or transferring the title to land. The plaintiff commenced this action to compel the defendant to receive the deed, and to obtain judgment for the purchase price. The complaint averred the above facts, and had a copy of the certificate

attached to it. The defendant demurred because, first, the plaintiff had not legal capacity to sue; and, second, that the complaint did not state facts sufficient to constitute a cause of action.

The Court overruled the demurrer, and the defendant having declined to answer, rendered judgment in favor of the plaintiff. The defendant appealed.

*Jarboe & Harrison,* for the appellant.

I. The certificate of incorporation is insufficient to create a corporate body. The statute under which the plaintiff claims to have been formed (Stat. 1858, p. 264), prescribes that the provisions of chapter eight of the Act concerning corporations (Stat. 1850, p. 373), shall be complied with in forming such corporations, and when "incorporated under the provisions of said act," the society "shall possess the same powers, be subject to like liabilities, and enjoy the like privileges as therein provided." (Sec. 1.) The statute of 1850 referred to, prescribes as essential to becoming a corporation.

1. That trustees shall be "appointed" or "elected" by the society "by such method as their rules, regulations or discipline may direct." (Sec. 176.)

2. That a certificate of such appointment be executed by the person or persons "making the appointment," or the judges "holding the election." (Sec. 176.)

This certificate must specify—(*a*) The names by which the trustees shall thereafter forever be called and known. (*b*) The number of trustees to be appointed.

It will thus be seen that the statute presupposes an existing society. That such society has rules or regulations for the "election" or "appointment" of officers. A compliance with these rules in selecting the trustees to be named in the certificate. The certificate in the present case is radically defective in various particulars.

1. It does not appear that any "society" was in existence prior to the date of the certificate; on the contrary, the inference from the certificate is that none existed.

2. If there was any society, the certificate fails to show

that the trustees were "appointed" in accordance with its rules, or that they were appointed "by the society," or indeed that any "trustees" were appointed by any person or persons whatever. The language of the certificate is: "That Frances A. McEnnis (and eight others), trustees, are appointed to manage the concerns of said society, for the period of one year."

This is not a certificate "of their appointment," but is a certificate that certain persons are appointed to manage the concerns of the society for one year. These persons, it is true, are styled trustees, but this is a mere *descriptio personarum* and falls very far short of being a certificate that they have been appointed as trustees. To appoint certain persons "to manage the concerns of the society for one year," differs materially from appointing them "as trustees to take charge of the estate and property belonging thereto, and to transact all affairs relative to the temporalities thereof." (Stat. 1850, p. 373, Sec. 175.)

The one are mere subordinate agents or employés of the parties making the appointment and are 'subject to the will of the appointing power, while the other class, by their appointment become the legal representative of the corporate body, and invested with the legal custody of its estate, endowed with perpetual succession, and with power to prescribe the very laws by which their own conduct shall be regulated and their office terminated.

3. The name by which the "trustees" are to be "forever" known, is not stated.

The certificate itself limits the existence of the society to fifty years, and the name of the "society" is not the name by which the "trustees" are to be called and known.

4. The certificate does not show in what county the "society" is "situated." The statute requires that it be recorded in such county. (Sec. 177.) The language of the certificate is:

"That the city of San Francisco, in the State of California, is where the principal place of business of the company or society is to be located."

There is a great difference between the location of the

"principal place of business" of a society, and the location or place of the society itself.   (*Harris* v. *McGregor*, 29 Cal. 125.)

Whatever the statute has required to be incorporated into the certificate must be inserted, else the society does not become a corporation.

The Legislature has granted the privileges of a corporation upon certain conditions, and any material omission will be fatal to the existence of the corporation.   (*Moquelumne Hill W. Co.* v. *Woodbury*, 14 Cal. 426; *Harris* v. *McGregor*, 29 Cal. 125; *Eastern Plank R. Co.* v. *Vaughan*, 14 N. Y. 546; *Union Ins. Co.* v. *Cram*, 33 N. H. 636.)

There is a distinction to be drawn between what are termed the preliminary steps towards forming a corporation, and the proceedings to be had in becoming a corporation.   The former are merely matters of detail leading up to the latter, but the latter are conditions precedent, in the absence of which the society has no corporate existence.

*George & Loughborough*, for the Respondents.

The certificate shows that nine trustees or directors were appointed, and that they were appointed by the persons who signed the certificate.   It appears that all the members of the association were appointed trustees, and that they all executed the certificate.

The certificate declares that they were "appointed to manage the concerns" of the society.   This language correctly describes the office to which they were appointed, even if the word "trustees," as used in the certificate, be regarded as merely descriptive of their persons.   Bouvier defines "directors" (a word used in the statute as the equivalent of "trustees,") to be "persons appointed or elected according to law, authorized to manage and direct the affairs of a corporation or company."

It was not necessary to state in the precise language of the statute, that they were appointed "as trustees to take charge of the estate and property belonging to the corporation, and to transact all affairs relative to the temporalities thereof."

The question of the plaintiffs' due incorporation or its right to exercise corporate powers, cannot be inquired into otherwise than at the suit of the State on information of the Attorney-General. (Stat. 1862, p. 110.) Until such action be brought, such *de facto* corporation has all the rights of a corporation *de jure.*

By the Court, McKINSTRY, J. :

The Act concerning corporations, (Stats. 1850, p. 273–4), authorizes all "moral, beneficial, literary or scientific associations," by such methods as their rules or regulations may direct, to appoint or elect any number, not less than three nor more than nine, trustees to take charge of the estate and property belonging thereto, etc. And, in section 176, "upon the appointment or election of such trustees or directors, a certificate of such appointment shall be executed by the person or persons making the appointment, or the judges holding the election, stating the names of the trustees or directors. The name by which said trustees shall thereafter forever be called and known shall be particularly mentioned and specified."

I. It is urged that the certificate given in evidence fails to comply with the statute, in that it does not appear therein that the nine persons whose names are subscribed to it constituted an existing society, with rules and regulations for the election or appointment of its officers, or that the trustees named had been chosen in accordance with such rules and regulations.

The statute does not require that the "rules or regulations" adopted by a society shall be set forth in the certificate, and I can hardly believe that a person other than the members can object that the rules were not complied with. If, however, this were permissible, there is no evidence in the present case of any departure from such rules.

The object of the provision of the statute is to require that the members of the society shall express their choice as to the persons to become trustees of the corporation, directly or through officers or agents selected by them in

the method prescribed by their rules or regulations. Whatever doubt might arise in other cases, none can exist that the will of the society is expressed in the certificate, where —as in the present case—all the members sign the certificate. The statute does not require that the rules shall have been reduced to writing, or that they shall have existed for any particular period of time; and the rules, whatever they are, may be changed by the unanimous action of the members. It affirmatively appearing that no one of the members objected to the mode which was pursued in selecting the trustees, but on the contrary, that all united in that mode, it must be assumed that there were no "rules or regulations" in conflict with the method adopted.

II. I have examined the original of the statute of 1850 in the office of the Secretary of State, and find that in the printed volume, the word "names" has been substituted for the word "name," in the clause last above quoted.

The object of that clause is to require that the certificate shall show the "name" by which the trustees (acting for the corporators,) shall be known, may acquire and dispose of property, sue and be sued. If this certificate had contained a statement, "the name by which the trustees of this society shall be known is the Roman Catholic Orphan Asylum," no question could be made as to its sufficiency. I can see no substantial difference between this and the language, "the corporate name of our society is 'The Roman Catholic Orphan Asylum.'" In each case the object of the statute is secured—a name is adopted, under which the trustees, acting for the society, may transact its business.

III. The statute does not require that the certificate shall contain a statement of the county in which the society is "situated."

Judgment affirmed.